UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ANGELA MARIE TURPIN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | MEMORANDUM & ORDER<br><br>23-CV-03992 (NRM) |

NINA R. MORRISON, United States District Judge:

Plaintiff Angela Marie Turpin ("Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for disability benefits. For the reasons that follow, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

### I.　Procedural History

Plaintiff applied for disability benefits with the Social Security Administration ("SSA") on July 1, 2020, claiming a period of disability beginning on March 19, 2020 due to back and neck impairments, high blood pressure, and asthma. AR 10, 257.[1] Plaintiff's claim was denied initially in October 2020, and again in June 2021 on

---

[1] Citations to the Administrative Record ("AR"), which was filed as a single document with the Court, ECF No. 5, use the pagination applied by the SSA prior to transmitting the record, located in the bottom right-hand corner of each page.

reconsideration. AR 10, 119–43. Thereafter, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on December 28, 2021, AR 44, 145, and the ALJ denied Plaintiff's application on January 28, 2022, AR 7, 28–29.

Plaintiff commenced this action on May 30, 2023. Compl., ECF No. 1. On December 6, 2023, Plaintiff moved for a judgment on the pleadings, seeking vacatur and remand of the ALJ's decision. Pl. Mot. for J. on the Pleadings ("Pl. Mot."), ECF No. 7. The Commissioner then cross-moved for judgment on the pleadings. Def. Mot. for J. on the Pleadings ("Def. Mot."), ECF No. 9.

## II.   Plaintiff's Claimed Disability

At the time of the ALJ hearing in 2021, Plaintiff was 52 years old. AR 46. From June 2016 until June 2017, Plaintiff worked as a home health aide. AR 258. Plaintiff sustained a work-related injury in March of 2014 for which she received decompression surgery on September 1, 2017. AR 661. Plaintiff received a favorable decision on a disability claim she filed for the period from June 2017 to September, 2018. AR 76–91. Then, starting in September 2018, Plaintiff worked as a bus monitor. AR 259. In one report, Plaintiff's attorney noted she worked for six hours a day in this position, five days a week. AR 258–59.

Plaintiff claims she became unable to work starting March 19, 2020. AR 217. Plaintiff alleges impairments of the neck and back. Plaintiff's function report filed with the SSA claims these impairments affect her capabilities in lifting, squatting, bending, standing, reaching, walking, sitting, climbing stairs, concentration, and getting along with others. AR 273. Plaintiff reported she can lift only five to ten

pounds. *Id.* Plaintiff further explained that she can walk for fifteen to thirty minutes before needing to take fifteen seconds to rest. *Id.*

At the hearing before the ALJ, Plaintiff testified as to her ability to carry out daily activities. She stated that she can do some shopping on her own, but needs help to do larger hauls. AR 58. Plaintiff can drive, but reported that her neck pain prevents her from turning her head to see while driving, and she has to turn her whole body to look to one side. AR 64. Plaintiff relies on her daughter's help to dress herself, do laundry, and clean around the house. AR 56–57. Plaintiff can cook, and she tries to wash the dishes. AR 57. Plaintiff sometimes walks her dog about half a block. AR 60. After about fifteen minutes of sitting, Plaintiff experiences neck pain that compels her to stand up and move around for a bit. AR 59.

Plaintiff also stated that she suffers from lifelong asthma that is triggered by high levels of aerobic activity, such as running. AR 55. The asthma causes a feeling of tightness in Plaintiff's chest that she reports experiencing "all day, every day." AR 56. Plaintiff experiences fatigue due to her diabetes. AR 54. Plaintiff reported high blood sugar levels three to four times a week. AR 67. Plaintiff also testified to experiencing numbness all down her left side. AR 60. Plaintiff reported experiencing headaches that last all day about twice a week. AR 64. On the advice of Dr. Matthew Kalter, Plaintiff's Physical Medicine and Rehabilitation Specialist, Plaintiff wears a back brace for activities like walking or shopping. AR 65. Plaintiff reports tiredness during the day and longer time needed for sleeping as a result of her sleep apnea, for which she uses a CPAP machine. AR 52.

Plaintiff stopped working in March of 2020. AR 51. Although her employment was suspended at this time due to the COVID-19 pandemic, Plaintiff testified that she would have stopped working anyway due to her worsening medical condition. AR 51. Also in March of 2020, Plaintiff began experiencing arrhythmia, for which she has been treated with an infusion. AR 62. In May or June of that year, Plaintiff visited the Emergency Room and was diagnosed with diverticulosis, which causes stomach pains and sends her to the bathroom constantly throughout the day. AR 53.

## III. Medical Records

The administrative record included treatment notes and other records from Plaintiff's medical providers. The findings as relevant to Plaintiff's claimed disability are summarized here.

### A. Dr. Faust

On January 30, 2020, Dr. Alfred Faust, Plaintiff's orthopedist, examined Plaintiff. AR 500. Dr. Faust found a diminished range of motion in all planes of Plaintiff's thoracic and lumbar spine, as well as pain at extremes of flexion and extreme extension. AR 501. Dr. Faust assessed cervical radiculopathy and lumbar disc herniation. *Id.* Dr. Faust also found a decompression to be necessary for Plaintiff in the future, and recommended a home exercise program. *Id.*

On July 13, 2020, Dr. Faust examined Plaintiff again. AR 497. Plaintiff complained of feeling like her whole body was in spasms, significant pain in the low back, urinary urgency and frequency, diarrhea, and intermittent incontinence. *Id.* Upon examination, Dr. Faust found Plaintiff's neck fully normal, found a diminished

range of motion of the thoracic and lumbar spine in all planes, that Plaintiff experienced pain at extremes of flexion and extension, that Plaintiff's motor exam was non-focal throughout both lower extremities and that her sitting straight leg raise test was negative bilaterally. *Id.*

B. <u>Dr. Kalter</u>

On March 3, 2020, Dr. Matthew Kalter, Plaintiff's physical medicine and rehabilitation specialist, examined Plaintiff and found that Plaintiff's cervical spine range of motion was limited by flexion secondary to pain, and found that Plaintiff had tenderness to palpation over the cervical paraspinals. AR 530–31. Dr. Kalter found full strength in the upper extremities, but found sensation was decreased to light touch in the left upper extremity. *Id.* Dr. Kalter prescribed oxycodone and recommended Plaintiff continue a home exercise program. AR 532.

On September 2, 2020, Dr. Kalter examined Plaintiff again. AR 504. Plaintiff noted pain in her neck and lower back with radiation to her arms and legs. *Id.* Dr. Kalter found Plaintiff's cervical range of motion limited by flexion secondary to pain, tenderness to palpation over the cervical paraspinals, and confirmed his sensation assessment from the March 3, 2020 visit. *Id.* Dr. Kalter diagnosed Plaintiff with cervical radiculitis, spondylosis, lumbar radiculitis and left shoulder impingement. AR 506. Dr. Kalter administered a lumbar trigger point injection, prescribed Oxycodone, Cyclobenzaprine, and Mobic, and recommended Plaintiff continue her home exercise program. *Id.*

On November 11, 2021, Dr. Kalter again examined Plaintiff. AR 860. In addition to reports of neck and low back pain radiating down to her left leg, Plaintiff reported numbness in her left cheek that had been going on for two to three years. *Id.* Dr. Kalter found a limited range of motion of the cervical and lumbar spine, with tenderness to palpation and spasm in both. AR 861. Dr. Kalter also found normal strength, sensation decreased to light touch in left lower extremity, and straight leg test negative bilaterally. *Id.* Kalter prescribed Oxycodone and recommended Plaintiff continue her home exercise program. AR 862.

Dr. Kalter offered an assessment of Plaintiff's capabilities on April 30, 2018, finding that Plaintiff should lift no more than fifteen pounds and should perform flexion or extension of no greater than fifteen degrees. AR 352. Dr. Kalter repeated these findings on May 20, 2020, again on September 2, 2020, and once more on November 11, 2021. AR 523, 506, 862.

## C. Dr. Israelski

On June 28, 2019, Dr. Ronald Israelski, an orthopedic surgeon, conducted an independent orthopedic examination of Plaintiff for Plaintiff's Worker's Compensation insurance carriers. AR 405. Dr. Israelski diagnosed cervical strain with radiculopathy and lumbosacral strain with mild radiculopathy. AR 406. Dr. Israelski concluded after this visit that Plaintiff had an overall temporary, partial, moderate disability, but that she could work with a restriction of lifting no more than 20 pounds. *Id.* Because Plaintiff's bus monitor job allowed her to remain seated and

6

required no heavy lifting, Dr. Israelski found she could continue working in this position. *Id.*

Dr. Israelski further indicated that Plaintiff was not at maximum improvement, and recommended left C3, C4, C5 foraminotomy as well as a trigger point injection. *Id.* Dr. Israelski also advised Plaintiff to take over-the-counter anti-inflammatories and an occasional muscle relaxant. *Id.*

D. Dr. Post

On July 12, 2019, Plaintiff's treating physician Dr. Nicholas Post, a neurosurgeon, conducted a neurological exam of Plaintiff. AR 399. Plaintiff reported neck pain at a level of 8/10 at this visit, a pain that radiated down the entire left arm. *Id.* Plaintiff also reported 8/10 pain in the lower back. *Id.* Plaintiff told Dr. Post of weakness in the legs and numbness in the left leg. *Id.* Dr. Post assessed Plaintiff's reflexes and motor examination as normal and found full strength in Plaintiff's upper and lower extremities. *Id.* Plaintiff reported to Dr. Post that her anterior cervical discectomy and fusion had provided only 1–2 months of symptom relief. *Id.*

E. Dr. Wang

On April 8, 2020, Dr. Shu Wang, Plaintiff's primary care doctor, conducted an evaluation over the phone. AR 779. Dr. Wang diagnosed palpitations, history of thyroid disease, serum calcium elevated, and abnormal liver function tests. AR 780. Dr. Wang evaluated Plaintiff again on April 16, 2020, finding Plaintiff's asthma to be stable. AR 775, 777. On May 7, 2020, Dr. Wang assessed the Plaintiff's asthma as

moderate persistent asthma, uncomplicated, and recommended Plaintiff start using a nebulizer. AR 763.

On October 19, 2020, Dr. Wang performed another examination, this time over video call. AR 735. Dr. Wang found a normal range of motion in Plaintiff's neck and upper and lower extremities, and that Plaintiff's diabetes was controlled and without complications. AR 737.

On September 20, 2021, Plaintiff reported chest tightness and sleeping with a CPAP machine to Dr. Wang, but denied shortness of breath currently or when walking and reported feeling a zero on the pain scale. AR 693. Dr. Wang diagnosed GERD, prescribed Omeprazole and Diflucan, and referred Plaintiff for a gastroenterology evaluation. AR 695.

### F. Physician's Assistant Jamil

On February 22, 2021, Plaintiff's registered physician's assistant Sadaf Jamil evaluated Plaintiff's asthma and found it mild and without complication. AR 796.

## IV. Medical Evaluations

Three doctors provided the ALJ with their evaluations of Plaintiff's medical conditions as related to her claimed disability. Only one of these doctors, Dr. Andrea Pollack, examined Plaintiff for this purpose.

### A. Dr. V. Au and Dr. S. Naroditsky

On September 25, 2020, Dr. V. Au, a state agency medical consultant, classified Plaintiff's spine disorders and diabetes as severe impairments, but judged that Plaintiff could perform a light range of work. AR 95–98. Dr. Au concluded that

Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally stoop or crawl, but could frequently kneel, balance, or crouch.  AR 97. Dr. Au advised that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.  *Id.*  Dr. S. Naroditsky, a medical consultant, confirmed Dr. Au's opinions, only differing in finding that Plaintiff could frequently climb ramps and stairs and was unlimited for balancing.  AR 110–113.

### B. Dr. Pollack

On April 21, 2021, Dr. Andrea Pollack, a state agency consultative examiner, examined Plaintiff. AR 651.  Dr. Pollack assessed that Plaintiff walked with a limp, could walk on heels and toes, and used no assistive device.  AR 652.  Dr. Pollack observed no difficulty in Plaintiff getting on or off exam table or in rising from her chair.  *Id.* Dr. Pollack found Plaintiff to possess full strength in her upper and lower extremities, as well as full grip strength in both hands.  AR 653.  Dr. Pollack found a moderate restriction for Plaintiff in squatting, bending, lifting, carrying, pushing, pulling, a mild restriction in reaching, a moderate restriction in walking, standing, climbing stairs, kneeling, and a mild restriction in sitting.  AR 653–54.  Dr. Pollack also advised that Plaintiff should stay away from smoke, dust, known respiratory irritants, heights, operating heavy machinery, activities which require heavy exertion, and activities which could put her at risk for fall or injury.  AR 654.

### V.    The ALJ's Decision

To be eligible for disability insurance benefits, a claimant must be found disabled within the meaning of the Social Security Act.  20 C.F.R. § 416.920; *see also*

20 C.F.R. § 416.905 (defining disability). In determining whether a claimant is disabled under the Social Security Act, an ALJ must follow a five-step framework. *Id.* § 416.920(a)(4); *see, e.g., Thomas v. Comm'r of Soc. Sec.*, No. 20-CV-5086 (PKC), 2022 WL 523544, at *2 (E.D.N.Y. Feb. 22, 2022).

At step one, an ALJ considers the claimant's work activity. If a claimant is "doing substantial gainful activity," an ALJ will find the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(i).

At step two, an ALJ determines whether a claimant suffers from a "severe medically determinable physical or mental impairment." *Id.* § 416.920(a)(4)(ii). An impairment must meet the "duration requirement in § 416.909": Unless the "impairment is expected to result in death," the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 416.909. If a claimant does not have an impairment or impairments that meets the duration requirement, an ALJ will find the claimant not disabled. *Id.* § 416.920(a)(4)(ii). If the duration requirement is met, an ALJ proceeds to step three.

At step three, an ALJ determines whether a claimant's impairment "meets or equals" one of the impairments listed in appendix 1 to subpart P of part 404 of the Social Security Act (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment qualifies under the Listings, a claimant will be found disabled. *Id.* If a claimant's impairment "does not meet or equal a listed impairment," an ALJ must "assess and make a finding about [the claimant's] residual functional capacity." *Id.* § 416.920(e).

At step four, the residual functional capacity ("RFC") is considered in relation to claimant's "past relevant work." *Id.* § 416.920(a)(4)(iv). If a claimant is able to perform "past relevant work," the claimant will be found not disabled. *Id.* If a claimant is unable to perform past relevant work, an ALJ proceeds to step five.

At step five, the RFC is considered along with the claimant's "age, education, and work experience" to determine whether the claimant can "make an adjustment to other work." *Id.* § 416.920(a)(4)(v). If a claimant "cannot make an adjustment to other work," the claimant will be found disabled. *Id.*

The ALJ's analysis followed this five-step evaluation framework and found that Plaintiff was not disabled under the relevant provisions of the Social Security Act.

First, the ALJ reviewed Plaintiff's earnings record and determined that, at step one, Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 13. At step two, the ALJ found four severe impairments in cervical degenerative disease, status post anterior cervical discectomy and fusion, lumbar degenerative disc disease, and asthma, that met the requirements under 20 C.F.R. § 404.1520(c). AR 13–15. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments equaling the severity of those listed in 20 C.F.R. part 404, subpart P, appendix 1. AR 16.

At step four, the ALJ found that Plaintiff could perform light work as defined in 20 CFR § 404.1567(b) with the limitations that Plaintiff could "sit for six hours, stand and walk for a total six hours, lift and or carry 20 pounds occasionally and 10

11

pounds frequently"; could "occasionally climb, balance, stoop, kneel, crouch and crawl"; and "should avoid concentrated exposure to respiratory irritants and avoid working at unprotected heights or with hazardous machinery." AR 18. Based on this RFC assessment, the ALJ determined that Plaintiff could still perform her previous job of a school bus monitor. AR 28. Because the ALJ determined Plaintiff could perform past relevant work, he did not proceed to step five and concluded that Plaintiff was not disabled as defined under the Social Security Act. AR 28.

Plaintiff filed a request for review with the Appeals Council, and her request was denied on January 20, 2023. AR 1. Plaintiff then timely commenced this civil action challenging the final decision of the Commissioner on May 30, 2023. Compl., ECF No. 1.

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, district courts do not "decide *de novo* whether a claimant was disabled" or "answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration] regulations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted). Instead, the Court's review is limited to determining whether the Commissioner's decision is free of legal error and supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)

12

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* at 103. "It means — and means only — 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It is "more than a mere scintilla." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

In applying the substantial-evidence standard, the Court must "defer[] to the presiding ALJ, who has seen the hearing up close." *Id.* at 108. If substantial evidence supports the Commissioner's findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013). After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g).

## DISCUSSION

The ALJ found that Plaintiff's RFC allowing for light work would permit her to perform her past work as a school bus monitor, which she did between September 2018 and March 19, 2020. Upon review, the Court concludes that the record contains, and the ALJ cited, sufficient evidence to sustain the Commissioner's burden on this finding.

First, the ALJ acknowledged that although Plaintiff sustained injuries and underwent spinal surgery, this was well before her onset date, and that in the time in between those events she continued to work as a school bus monitor. AR 19–21.

13

Substantial evidence supports the ALJ's determination that Plaintiff's condition did not deteriorate during this period. For example, the ALJ observed that Plaintiff's treating physician Dr. Kalter listed the same restrictions of not lifting more than 15 pounds and not flexing or extending the neck beyond 15 degrees in multiple examinations, both before and after the onset period. AR 25; *see* AR 388, 862.

The ALJ also considered the January 2020 opinion of Dr. Faust, who noted that Plaintiff had partial limitations for work. However, the ALJ ultimately found this opinion unpersuasive because it was conclusory without noting specific limitations, and it took place before the onset date. AR 27; *see* AR 500–01. By contrast, other examinations contemporaneous to the onset date noted no relevant complications. AR 27. For example, Plaintiff's primary care doctor, Dr. Wang, found at various points after the onset date, that: Plaintiffs' asthma was stable and uncomplicated, AR 763, 776–77; her diabetes was controlled and without complications, AR 737; and she had a normal range of motions in the neck and upper and lower extremities, AR 737. Notably, in July 2020, Plaintiff contacted Dr. Wang to be excused from work during the pandemic due to her asthma, but Dr. Wang cleared her for work, noting that she "should be able to work with proper protection." AR 748–49.

Finally, the ALJ also found persuasive the assessments of agency medical consultants Dr. Au and Dr. Naroditsky. In September 2020, Dr. Au opined that Plaintiff could perform light range of work and had no postural or environmental limitations. At the reconsideration level, Dr. Naroditsky affirmed Dr. Au's opinion.

14

Plaintiff argues that opinions from non-examiners cannot fulfill the substantial evidence standard. However, "[i]t is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (collecting cases). Indeed, "[a] non-examining medical source's opinion may 'override treating sources' opinions, provided they are supported by evidence in the record.'" *Kelly v. Berryhill*, No. 19-CV-741 (BMC), 2020 WL 565412, at *4 (E.D.N.Y. Feb. 5, 2020) (quoting *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)).

In any case, the ALJ did not solely rely on the opinions of non-treating physicians, as Plaintiff alleges. He also considered the "partially persuasive" opinion of Dr. Kalter, AR 25, and the "somewhat persuasive" opinion of Dr. Pollack, AR 27. Further, in addition to the medical opinion evidence, the ALJ considered Plaintiff's own allegations of disability, which he found to be consistent with the record evidence. AR 27.

As already noted, the "substantial evidence" standard is not a high bar. It requires simply "more than a mere scintilla," and no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. at 102 (citations omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). The Court thus finds that the ALJ's determination is supported by substantial evidence.

Plaintiff challenges the RFC determination by arguing that the ALJ committed legal error in several aspects of his reasoning.  First, she argues that the ALJ erred in his consideration of the medical opinion of Dr. Kalter, Plaintiff's treating physician because the ALJ "failed to distinguish between supportability and consistency" and thus offered only "conclusory statements" as to his opinion.  Pl. Mot. at 15–16.  However, the Court finds that the ALJ appropriately considered both factors with respect to Dr. Kalter's opinion.

The ALJ found Dr. Kalter's opinion "partially persuasive" because he found that "limiting the claimant to 15 pounds is not fully supportable."  AR 25.  First, the ALJ found that Dr. Kalter's restrictions were unsupported by his own findings that Plaintiff had normal strength.  AR 25; *see* AR 530–31, 861.  The ALJ also found that this opinion was inconsistent with other contemporaneous examinations.  For example, in an examination by Dr. Wang in October 2021, Plaintiff denied any musculoskeletal issues and noted a pain scale rating of zero.  AR 25; *see* AR 684–85.

On this point, Plaintiff contests the validity of this examination with Dr. Wang, noting that on that date, she "presented for her flu vaccine and there is nothing in the record to suggest that a physical examination was conducted."  Pl. Mot. at 16–17.  But that is not reflected in the record.  Though the visit in question does indeed appear to be for a flu vaccine, it is also apparent that Dr. Wang conducted a general examination, as evidenced by the blood pressure, pulse, and temperature readings, as well as specific notes under "General Examination."  AR 685.

16

Finally, as discussed previously, the ALJ observed that Dr. Kalter's recommendation as to Plaintiff's limitations was the same before and after the onset period, including when Plaintiff was still working as a school bus monitor.

"[A]n 'ALJ is not required to adopt wholesale any specific limitation assessed by any one provider.'" *Whited v. Comm'r of Soc. Sec.*, No. 19-CV-887 (FPG), 2020 WL 8675800, at *2 (W.D.N.Y. July 23, 2020) (quoting *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 19-CV-10, 2020 WL 109007, at *11 (N.D.N.Y. Jan. 9, 2020)). Plaintiff in essence asks the Court to reweigh the evidence and require the Commissioner to credit the opinion of Dr. Kalter over the other opinions and evidence in the record. But that is not the function of a district court in a social security disability benefits appeal. *See Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *16 (S.D.N.Y. Feb. 4, 2011) ("It is not for this Court to reweigh the evidence in a social security case." (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998))).

Plaintiff next argues that the ALJ erred in determining that Plaintiff "should avoid concentrated exposure to respiratory irritants." AR 18. Her position is that this is in contrast with the opinions of agency reviewers Dr. Au and Dr. Naroditsky, who both indicated that Plaintiff should "[a]void even moderate exposure" to "[f]umes, odors, dust, gases, poor ventilation, etc." AR 97, 112. Plaintiff further claims that Dr. Pollack "assessed the same respiratory restrictions for Ms. Turpin." Pl. Mem. at 18.

First, the Court notes that Dr. Pollack's opinion simply states that Plaintiff "should avoid smoke, dust, [and] known respiratory irritants." AR 654. Unlike the

opinions of Dr. Au and Dr. Naroditsky, there is no indication in Dr. Pollack's opinion of the extent of that restriction.

As for the opinions of Dr. Au and Dr. Naroditsky, the ALJ considered their recommendations as to exposure to respiratory irritants and explained that he did not find them persuasive because Plaintiff "has not required emergency room visits or hospitalization for asthma; she does not know what triggers it; and the treatment records document no limits due to asthma." AR 26.

An ALJ's "conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022); *see also Kelly*, 2020 WL 565412, at *4 (upholding an ALJ's analysis of a non-examining consultant's opinion where "[t]he ALJ spent very little time discussing" the opinion but, "even from the terse analysis []" it was "evident that the ALJ afforded [the consultant's] opinion proper weight"). On this Court's review, the ALJ's finding with regard to Plaintiff's asthma-related exposure is supported by substantial evidence.

For example, in April 16, 2020, Dr. Wang found Plaintiff's asthma to be stable. AR 775, 777. On May 7, 2020, Dr. Wang continued to assess Plaintiff's asthma as uncomplicated. AR 763. On February 22, 2021, Plaintiff's registered physicians' assistant Sadaf Jamil also evaluated Plaintiff's asthma and found it mild and without complication. AR 796.

Plaintiff argues that the ALJ incorrectly stated that "the treatment records document no limits due to asthma," AR 24, because during the previously mentioned

18

flu vaccine visit, Dr. Wang instructed Plaintiff to "avoid triggers such as household chemicals," AR 685. However, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted). Further, Dr. Wang's notes from the same visit indicate that Plaintiff's asthma was "uncomplicated," and that Plaintiff denied any chest pain, shortness of breath, or wheezing. AR 684–85. In any case, the ALJ did ultimately find that Plaintiff should avoid concentrated exposure to irritants, which is consistent with Dr. Wang's recommendation.

Finally, the Commissioner emphasizes that in the administrative proceedings below, Plaintiff did not argue that her asthma was work-preclusive, focusing instead on her back and neck related ailments. On this point, it is notable that although Plaintiff now argues that the ALJ did not give enough weight to the recommendation of Dr. Au and Dr. Naroditsky with respect to their recommendations for Plaintiff's asthma-related restrictions, the ALJ actually included a greater limit for Plaintiff's postural limitations in his RFC finding than was recommended by those agency examiners. AR 26.

Moreover, at this step of the inquiry, Plaintiff "has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original). Crucially, however, Plaintiff does not dispute — indeed, she has affirmatively represented — that her asthma was a lifelong condition. AR 26, 55.

19

In other words, her longstanding asthma did not previously prevent her from her work as a school bus monitor. Indeed, as discussed earlier, Plaintiff sought leave from work during the COVID pandemic, and Dr. Wang, her primary care provider, opined that she was capable of continuing that work, subject to pandemic precautions. AR 749.

In sum, even if the Court finds persuasive certain aspects of Plaintiff's objections to the ALJ's reasoning, she ultimately fails to establish that the ALJ's finding that she was capable of her past relevant work as a school bus monitor is not supported by substantial evidence. Where, as here, the ALJ's findings and ultimate RFC assessment are supported by substantial evidence and are free of legal error, the district court may not substitute its judgment for that of the Commissioner.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted.

/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge

Dated:        May 1, 2026
              Brooklyn, New York

20